UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| 1407, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF FORT WAYNE, INDIANA <br> and FORT WAYNE BOARD OF ZONING <br> APPEALS, <br><br> Defendants. | CAUSE NO.: 1:18-CV-224-TLS |

# OPINION AND ORDER

This matter is before the Court on the Plaintiff's, 1407, LLC, Motion for Preliminary Injunction and Request for Evidentiary Hearing [ECF No. 3] and the Defendants', City of Fort Wayne (the City) and the Fort Wayne Board of Zoning Appeals (the BZA), Motion for Partial Summary Judgment [ECF No. 25]. For the reasons stated below, the Court DENIES the Plaintiff's Motion for a Preliminary Injunction and Request for Evidentiary Hearing [ECF No. 3] and GRANTS the Defendants' Motion for Partial Summary Judgment [ECF No. 25].

# STATEMENT OF FACTS

The Plaintiff, 1407 LLC, is the purchaser and occupant of the property at 1407 S. Calhoun Street in Fort Wayne, Indiana (the Property) under a land contract with Fort Wayne Building, LLC (FWB). The Plaintiff's proposed use for the Property is categorized as either an

"adult cabaret" [1] or an "adult nightclub"[2] under the Fort Wayne Zoning Ordinance (the FWZO), which qualifies as a "Sexually Oriented Business."[3] The Property was used as a Sexually Oriented Business from approximately 1976 to October 2016.

The Property is in an area of the City zoned as Downtown Core (DC Zoning District). Sexually Oriented Businesses are not permitted within the DC Zoning District but are permitted within the City's Intensive Commercial Zoning District (C4 Zoning District). The Property's previous use as a Sexually Oriented Business from 1976 to October 2016 in the DC Zoning District was permitted and grandfathered under Section 157.504(C)(1) of the FWZO, which states: "Except as otherwise provided in this section, a use that existed as of March 2, 1988, or that subsequently becomes nonconforming as a result of an amendment to this ordinance, may be continued." The FWZO permits nonconforming use to continue, but this right is not absolute and may be lost under certain circumstances, including the discontinuation of use for twelve consecutive months. FWZO Section 157.504(F)(1)(a) provides: "Any nonconforming use that has been discontinued for a period of twelve (12) consecutive months as determined by the Zoning Administrator shall be deemed abandoned and shall not be permitted to be reestablished. Any subsequent use of the lot shall only conform to the use provisions in this ordinance."

---

[1] The FWZO defines an "adult cabaret" as a "nightclub, bar, restaurant, theater or other establishment, whether or not alcoholic beverages are served, which displays: (1) Persons who appear nude or semi-nude, (2) Live performances which are characterized by the exposure of specified anatomical areas or by specified sexual activities, or (3) Films, motion pictures, video cassettes, compact disc, slides, or other photographic reproductions which are characterized by their emphasis upon the exhibition or description of specified sexual activities or specified anatomical areas." *See* FWZO § 157.506.

[2] The FWZO defines an "adult night club" as a "nightclub devoted to adult entertainment, presenting material distinguished or characterized by an emphasis on matter depicting, describing, or relating to specified sexual activities or specified anatomical areas, or, a nightclub that features topless dancers, go-go dancers, strippers, male or female impersonators, or entertainers for observation by patrons." *See* FWZO § 157.506.

[3] The FWZO defines "Sexually Oriented Business" as "an adult bookstore, adult cabaret, adult motion picture theater, adult night club, adult novelty store, adult video store, nude or semi-nude model studio, or sexual encounter establishment." *See* FWZO § 157.506.

Around October 2016, the tenant operating a Sexually Oriented Business on the property lost its tenancy. In November 2016, FWB obtained permits to remodel the interior of the building to prepare to re-open it as an adult cabaret/nightclub. Between November 2016 and December 2017, neither FWB nor the Plaintiff sought an Improvement Location Permit or Certificate of Use within the 12-month period under FWZO § 157.504(F)(1)(a) to continue a Sexually Oriented Business at the Property. In November 2017, the proposed new tenant's, Fort Wayne's Finest DT, Inc., counsel contacted city officials to ascertain the status of final inspections for the building. Counsel for Fort Wayne's Finest DT, Inc., stated that it understood that the Property was a grandfathered facility and that it wanted to reopen before November 25, 2017, the one-year anniversary of the prior business's closing.

Subsequently, on December 1, 2017, the Fort Wayne Zoning Administrator wrote to the FWB, the owner of the Property, and the proposed operator of the Sexually Oriented Business, to inform them that the nonconforming use for the Property had been abandoned for twelve months pursuant to FWZO § 157.504(F)(1)(a). The Zoning Administrator advised the parties that it could appeal this determination to the Fort Wayne Board of Zoning Appeals (BZA) within thirty days, but neither FWB nor the proposed operator of the Sexually Oriented Business did so.

Fort Wayne's Finest DT, Inc., was unable to finalize its improvements to the property and the Plaintiff, 1407, LLC, assumed occupancy in February 2018. On March 27, 2018, the Plaintiff, as the new purchaser of the Property and proposed operator of a Sexually Oriented Business, applied for a Certificate of Use to operate an "adult bar" on the Property. The Zoning Administrator denied the Plaintiff's application as a Sexually Oriented Business is not a permitted use in a DC Zoning District. The Plaintiff and FWB appealed the zoning determination to the BZA, which affirmed the Zoning Administrator's decision on June 21, 2018.

On July 19, 2018, the Plaintiff filed a Complaint [ECF No. 1]. The Plaintiff contends that: (1) the FWZO violates its rights under the First and Fourteenth Amendments and seeks declaratory relief thereof (Count I); (2) the Plaintiff has suffered and will continue to suffer harm due to the Defendants' violations of the First and Fourteenth Amendment and is thus entitled to a permanent injunction (Count II); (3) the Defendant is entitled to a declaration that the Defendants' treated the Plaintiff disparately in violation of the Fourteenth Amendment (Count III); (4) the Plaintiff is entitled to a preliminary injunction (Count IV); (5) the Plaintiff is entitled to recover compensatory damages of $500,000 due to the Defendants' violations of the First and Fourteenth Amendment (Count V); (6) the case merits an order reversing and setting aside the BZA decision pursuant to Ind. Code § 36-7-4-1600, et seq., and compelling the Defendants to issue the Plaintiff a certificate of use for an adult cabaret/nightclub at its premises (Count VI).

On July 19, 2018, the Plaintiff filed a Motion for Preliminary Injunction and Request for Evidentiary Hearing [ECF No. 3]. On September 7, 2018, the Defendants filed a Motion for Partial Summary Judgment [ECF No. 25]. The Defendants argue that they are entitled to summary judgment as a matter of law on all the Plaintiff's federal law claims brought in Counts I, II, III, IV, and V of the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 56 and N.D. Ind. L.R. 56-1. The Defendant filed a combined brief [ECF No. 26] in support of summary judgment and in opposition to Plaintiff's preliminary injunction motion. On October 1, 2018, the Plaintiff filed a Reply [ECF No. 28] in further support of their motion for preliminary injunction. Separately, on the same day, the Plaintiff filed a Response [ECF No. 29] to the Defendants' Motion for Partial Summary Judgment. On October 19, 2018, the Defendants filed a Reply in Support of their Motion for Partial Summary Judgment [ECF No. 31].

**STANDARD OF REVIEW**

Summary judgment is proper where the evidence of record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 324. "[A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material issue, then the Court must enter summary judgment against it. *Id.*

**ANALYSIS**

The Plaintiff alleges that the Defendants violated its rights pursuant to the First and Fourteenth Amendment in denying its application for a Certificate of Use to operate an adult cabaret or nightclub at its premises, while issuing a permit to a similarly situated entity. The Plaintiff therefore requests that the Court issue an order reversing and setting aside the BZA decision pursuant to Ind. Code § 36-7-4-1600, et seq. and seeks declaratory relief as well as both a preliminary and permanent injunction.

**A. Plaintiff's First Amendment Claims**

The Plaintiff argues that the Defendants violated its First Amendment rights in three ways: first, the FWZO is a content-based restriction on expression; second, the Defendants limit Sexually Oriented Businesses to an unconstitutionally small number of parcels and do not allow

sufficient alternative avenues of communication and; third, the Defendants' definition of adult cabaret and adult nightclub is unconstitutionally overbroad.

### 1. *Content-Based or Content-Neutral*

The Plaintiff argues that the FWZO is a content-based restriction and thus subject to a strict scrutiny analysis. (Pl.'s Resp. Br. in Opp. of Defs.' Mot. for Summ. J. at 16.) The Defendants argue that the FWZO should be subject to intermediate scrutiny analysis. (Defs.' Reply in Supp. of Mot. for Summ. J. at 4.) Regulations designed to restrain speech based on its content are subject to strict scrutiny and are presumptively invalid under the First Amendment. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992); *Stromberg v. California*, 283 U.S. 359, 368–69 (1931). Such regulations draw strict scrutiny "because their purpose is typically related to the suppression of free expression and thus contrary to the First Amendment imperative against government discrimination based on viewpoint or subject matter." *Schultz v. City of Cumberland*, 228 F.3d 831, 840 (7th Cir. 2000) (citing *Texas v. Johnson*, 491 U.S. 397, 403 (1989)).

Our analysis of Fort Wayne's zoning regulations of Sexually Oriented Businesses and any First Amendment implications derives from the Supreme Court's decisions in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976) (plurality), *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), and *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002) (plurality). To determine whether the zoning regulation should be subject to intermediate scrutiny, the Court must consider: (1) whether the regulation constitutes an invalid total ban or merely a time, place, and manner regulation; (2) whether the regulation is content-based or content-neutral, and accordingly whether strict or intermediate scrutiny is to be applied; and (3)

if content-neutral, whether the regulation is designed to serve a substantial government interest and allows for reasonable alternative channels of communication. *Renton*, 475 U.S. at 46–47.

The Court must evaluate whether the FWZO constitutes a valid time, place, or manner restriction. A valid time, place, or manner restriction is: (1) content-neutral; (2) narrowly tailored to further substantial government interests; and (3) leaves open ample alternative means for communicating the desired message. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). This analysis also fulfills the second step of the *Renton* analysis, as the Court must determine whether the zoning regulation is content-neutral. To be content-neutral, a regulation must not be aimed at the content of the adult businesses. Rather, the regulations must be aimed at the harmful and undesirable secondary effects of such businesses on the surrounding community. *Renton*, 475 U.S. at 47 ("'[C]ontent-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication."); s*ee also HH-Indianapolis, LLC v. Consol. City of Indianapolis and Cty. of Marion, Ind.*, 889 F.3d 432, 428 (7th Cir. 2018).

The time, place, and manner restrictions in FWZO Section 157.217(B) are not solely directed at nude or semi-nude dancing. The Defendant's zoning regulations apply to other types of businesses that are defined as Sexually Oriented Businesses that do not involve similar performances, including adult motion picture theatres, adult novelty stores, adult video stores, and sexual encounter establishments. (Aff. of P. Blisk, Ex. B, FWZO Section 157.506, ECF No. 25-1.) The FWZO does not regulate the expression that occurs at a Sexually Oriented Business, the acts that can be performed there, on when or in what manner such expression takes place. The FWZO is content-neutral, narrowly tailored, and does not prohibit Sexually Oriented

7

Businesses, including the kind the Plaintiff seeks to open. The FWZO is a valid time, place, and manner regulation and content-neutral, thus intermediate scrutiny should apply.

The Plaintiff cites *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), to support its contention that strict scrutiny applies and that the Court has fundamentally altered its approach analyzing regulations of Sexually Oriented Businesses. (Pl.'s Resp. Br. in Opp. to Defs.' Mot. for Summ. J. at 15–18.) The Plaintiff argues that the Supreme Court's ruling means the Defendant bears the burden of demonstrating that the FWZO satisfies a strict scrutiny test. (*Id*. at 16.) The Plaintiff "acknowledges that courts have not embraced this position, but have also recognized that it is an open issue." (*Id.* at 18.) The Defendants disagree that *Reed* means that strict scrutiny should apply to the FWZO. (Defs.' Reply. in Supp. of Mot. for Summ. J. at 4.)

*Reed* did not address the long line of Supreme Court cases regarding zoning regulations of Sexually Oriented Businesses. The Seventh Circuit itself has stated, "We don't think *Reed* upends established doctrine for evaluating regulation of businesses that offer sexually explicit entertainment…." *BBL*, *Inc. v. City of Angola*, 809 F.3d 317, 326 n.1 (7th Cir. 2015). The Plaintiff's contention that *Reed* fundamentally altered this landscape is unpersuasive. The Seventh Circuit has declined to apply *Reed* to an adult business ordinance and instead applied the Supreme Court's existing precedents that called for intermediate scrutiny. *Id.* As stated above, the FWZO meets the requirements to be a valid time, place, and manner restriction meriting an intermediate scrutiny analysis. *Reed* has not altered this standard and the FWZO should be subject to intermediate scrutiny.

Having determined that intermediate scrutiny applies, and as the last step of the *Renton* analysis, the Court must determine whether the ordinances are motivated by an interest in reducing the secondary effects associated with the speech, rather than an interest in reducing the

8

speech itself. *Alameda Books*, 535 U.S. at 440–41. Zoning regulations regarding adult businesses aimed at suppressing secondary effects are constitutional "so long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication." *Renton*, 475 U.S. at 47.

"[A] municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest." *Alameda Books*, 535 U.S. at 438 (quoting *Renton*, 475 U.S. at 51–52). The Courts should not be in the business of second-guessing fact-bound empirical assessments of city planners. *Id.* at 451. The Defendants argue that the zoning regulations regarding Sexually Oriented Businesses are in response to the judicially-recognized effects of such businesses and other urban planning concerns. (Defs.' Br. in Supp. of Mot. for Summ. J. at 12 (citing *Alameda Books* 535 U.S. at 446–47).) These judicially-recognized effects include the acknowledgement that multiple adult businesses in close proximity may change the character and quality of a neighborhood, and impact crime rates and property values. (*Alameda Books* 535 U.S. at 434, 445) This is sufficient justification for the zoning of Sexually Oriented Businesses and the Court will not further scrutinize the City's zoning choices.

The FWZO does not suppress or ban the speech within Sexually Oriented Businesses, rather, it directs where the expression may take place within the city. (Defs.' Br. in Supp. of Mot. for Summ. J. at 12.) Sexually Oriented Businesses are permitted within the City, just outside of the Plaintiff's desired zoning district. This, in of itself, is not a First Amendment violation. "[T]he First Amendment requires only that [a city] refrain from effectively denying [sexually oriented businesses] a reasonable opportunity to open and operate [a sexually oriented business] within the city." *Renton*, 475 U.S. at 54. Furthermore, the Seventh Circuit has long held that

municipalities are permitted "to zone strip joints, adult book stores, and like erotic sites out of the residential and classier commercial areas of the city or town." *See, e.g.*, *Blue Canary Corp. v. City of Milwaukee*, 270 F.3d 1156, 1158 (7th Cir. 2001); S*chultz v. City of Cumberland,* 228 F.3d 831, 845–46 (7th Cir. 2000); *N. Ave. Novelties, Inc. v. City of Chi.,* 88 F.3d 441, 444–45 (7th Cir. 1996). Based upon the foregoing, the Court finds that the FWZO is designed to suppress secondary effects rather than the speech itself and is not violative of the First Amendment pursuant to an intermediate scrutiny analysis.

### 2. *Unconstitutionally Small Number of Parcels*

In the City of Fort Wayne, Sexually Oriented Businesses are permitted to operate in the City's Intensive Commercial Zoning District (C4 Zoning District) provided the business meets the following setback requirements: (1) 500 feet from an existing Allen County or City of Fort Wayne Agricultural or Residential zoning district; (2) 1,000 feet from any existing or pending sexually oriented business; and (3) 750 feet from any existing or pending religious institution or school. The Plaintiff alleges that the FWZO relegates Sexually Oriented Businesses to an unconstitutionally small number of parcels and does not allow sufficient alternative avenues of communication in contravention of the First Amendment. (Pl.'s Resp. in Opp. of Defs.' Mot. for Summ. J. at 2–3.)

The Defendants state that there are twenty-three different parcels within the zoning jurisdiction of the City that meet the setback requirements for a Sexually Oriented Business and that the City has not received any zoning applications to open or locate a sexually oriented business in any C4 Zoning District, including from the Plaintiff, since 2014. The Plaintiff argues that, in fact, there are, at most, six locations that meet the setback requirements. (Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J. at 2.) Further, the Plaintiff argues that seventeen of the twenty-

10

three sites the Defendants identified as available under the FWZO are eliminated because they are within 1,000 feet of an alleged adult bookstore. (Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J at 11.) The Plaintiff further states that of the four sites remaining, only one could host a Sexually Oriented Business due to the FWZO's requirements because four Sexually Oriented Business could not exist concurrently. *Id.* The Plaintiff argues that permitting Sexually Oriented Business on twenty-three of 5,000 parcels of land violates the First Amendment. (*Id*. at 12.)

In the Seventh Circuit, a reasonable opportunity to disseminate the speech in question does not hinge of the percentage of land available under the ordinance. *N. Ave. Novelties, Inc.*, 88 F.3d at 445. Rather, zoning schemes that regulate the location of speech must "provide a reasonable opportunity to disseminate the speech at issue." *Id.* The reasonable opportunity inquiry focuses on whether "any person has attempted to open an adult use, but was prevented from doing so by [the] ordinance." *Id*.

In this case, the City has not received any applications for an Improvement Location Permit to locate a Sexually Oriented Business within the appropriate zoning jurisdiction since 2014. (Aff. of Paul Blisk, ¶¶ 8–10.) The demand for sites for a Sexually Oriented Business is currently only one, and there are between one and twenty-three sites that can meet the FWZO's location requirements for a sexually oriented business. There is a reasonable opportunity for the Plaintiff to disseminate the speech at issue.

Finally, the Plaintiff cites *North Ave. Novelties, Inc. v. City of Chicago*, 88 F.3d 441, 445 (7th Cir. 1996), to support its proposition that whether a municipal zoning law that governs the location of a Sexually Oriented Business provides a reasonable opportunity to disseminate the speech at issue is a fact-based determination inappropriate for summary judgment. (Pl.'s Resp. Br. in Opp. to Defs.' Mot. for Summ. J. at 7, 10) (citing *7421 W. 100th Place Corp.*, No. 13 C

4336, 2016 WL 5373062 at *9 (N.D. Ill. Sept. 26, 2016); *BBL, Inc. v. City of Angola,* No. 1:13-CV-76-RLM-RBC, 2014 WL 26093, at **27–28 (N.D. Ind. Jan. 2, 2014), *aff'd*, 809 F.3d 317 (7th Cir. 2015). This case, however, is distinguishable from both *7421 West 100th Place* and *BBL*. In both those cases, there was a dispute regarding whether *any* sites were available pursuant to the City's zoning regulations. *See 7421 W. 100th Place*, 2016 WL 5373062, at *8; *BBL*, 2014 WL 26093, at *28. In this case, the Plaintiff admits that at least one site is available, if not four, and there is only one entity seeking to open a Sexually Oriented Business. There is no ambiguity here with respect to whether *any* cites are available. Thus, the Court finds that there is not an unconstitutionally small number of parcels available for the Plaintiff's potential Sexually Oriented Business. The Plaintiff's argument does not survive summary judgment.

### 3. *Definition of Adult Cabaret and Adult Nightclub*

The Plaintiff argues that the definition of adult cabaret and adult nightclub is unconstitutionally overbroad. (Pl.'s Resp. in Opp. to Mot. for Summ. J. at 12.) The Plaintiff argues that the FWZO's definition sweeps within its scope businesses and entities that are not shown to be associated with and are not claimed to cause secondary effects and is thus overbroad. (*Id.* (citing *Schultz v. City of Cumberland*, 228 F.3d 831, 849 (7th Cir. 2000).) The Defendants argue that: (1) a business that qualifies as an adult business cannot complain, on behalf of third parties, on the alleged vagueness or overbreadth in a zoning ordinance governing such establishments and; (2) that the Plaintiff fails to meet the standards to demonstrate that the statute is overbroad. (Defs.' Reply in Supp. of Summ. J. at 6.)

The Supreme Court has held "that a defendant whose own speech was unprotected had standing to challenge the constitutionality of a statute which purported to prohibit protected speech, or even speech arguably protected." *Young*, 427 U.S. at 59. The overbreadth doctrine, in

certain circumstances, permits litigants already before the Court to challenge a regulation on its face and raise the rights of third parties whose protected expression is prohibited or substantially burdened by the regulation. *Schultz*, 228 F.3d at 848. To be overbroad, the law's application to protected speech must be substantial. *Anderson v. Milwaukee Cty.*, 433 F.3d 975, 979 (7th Cir. 2006) (citing *Virginia v. Hicks*, 539 U.S. 113 (2003)). The showing of "substantial" overbreadth must be made "from the 'text of [the law] and from actual fact." *Hicks*, 539 U.S. at 122 (alteration in original).

To establish a facial overbreadth challenge, the Plaintiff must establish a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court. *Id.* "Application of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). A facial overbreadth challenge fails when the regulation's plain language is readily susceptible to a narrowing construction that would make it constitutional. *Schultz*, 228 F.3d at 850 (citing *Virginia v. Am. Booksellers*, 484 U.S. 383, 397 (1988)).

The Plaintiff's overbreadth challenge fails. The FWZO clearly distinguishes between adult entertainment facilities and other facilities that are not adult in nature. The FWZO defines an "adult entertainment establishment," which includes both adult cabarets and adult nightclubs, as "any establishment having as a substantial or significant portion of its business the offering of adult entertainment…" FWZO § 157.506. The definitions of adult cabaret and adult nightclubs both include references to "sexual activities." The FWZO defines a general "entertainment facility," however, as a "facility that offers indoor or outdoor entertainment uses, including performing arts theatres, cinemas, concert venues, or circus/festivals, but *does not include adult*

13

*entertainment establishment uses.*" FWZO § 157.506 (emphasis added). The Plaintiff appears to misunderstand this point, noting that FWZO's language regarding adult entertainment "is not limited to establishments that always or regularly feature 'adult entertainment.'" (Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J. at 15.) This is not the case, as the FWZO readily distinguishes between the two entities, requiring an adult cabaret or adult nightclub to have a "substantial or significant portion" of its business in the offering of adult entertainment. *See* FWZO § 157.506. The Supreme Court and Seventh Circuit have upheld similar significant or substantial portion language as sufficient to survive an overbreadth challenge. *See, e.g.*, *Young*, 427 U.S. at 53 n.5 (upholding similar "significant or substantial portion of its stock in trade" clause); *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 997 (7th Cir. 2002) (rejecting plaintiffs' overbreadth challenge where "[t]he Ordinance's plain language limits its application to Media of which nudity or sexual activities form the essential component." (emphasis omitted)).

The Plaintiff's challenge is thus deficient because controlling law indicates that the FWZO's "substantial" or "significant" language is effective to survive an overbreadth challenge. Therefore, the Plaintiff's overbreadth claim fails to survive summary judgment.

### B. Plaintiff's Fourteenth Amendment Claims

The Plaintiff argues that the Defendants violated its rights under the Fourteenth Amendment through the denial of the certificate of occupancy when another, similarly situated, business (Club 44) was granted a certificate of occupancy. The Defendants contend that the Plaintiff brings no valid equal protection issue under the Fourteenth Amendment since the different zoning treatment the Plaintiff alleges was the application of the FWZO to a different set of facts and circumstances.

The Defendants state that Club 44 (which previously operated under the name "Stewies") applied for a Certificate of Use before it began any renovations and before the 12-month period in the FWZO expired. (Defs.' Reply in Supp. of Summ. J. at 2–3.) The Defendants argue that the Plaintiff's failure to obtain a Certificate of Use before the 12-month period in the FWZO expired means that there was a rational basis for the difference in treatment between the issuance of the Certificate of Use for Club 44 and the denial of the Plaintiff's Certificate of Use. (Defs.' Reply in Supp. of Summ J. at 4.) The Plaintiff argues that the renovations it undertook indicate that it expressed an intention to maintain the "valuable" nonconforming use status of the property as an adult cabaret/nightclub. (Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J. at 23.)

It appears that the Plaintiff attempts to allege a "class-of-one" equal protection claim. To succeed in this case, the Plaintiff must "show an absence of rational basis by identifying some comparator–that is some similarly situated person who was treated differently." *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015). The Plaintiff must also allege that the state actors lacked a rational basis for singling them out for intentionally discriminatory treatment. *Id.* at 1121. The Seventh Circuit grants great deference to a local government's decisions involving land use. *See CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014) ("We note at the outset, however, that federal courts, as we have explained time and again, are not zoning boards of appeal. . . . State and local land-use decisions are entitled to great deference when constitutional claims are raised in federal court.") (citations omitted). For a "viable equal protection claim in the land-use context, the plaintiff must demonstrate governmental action wholly impossible to relate to legitimate governmental objectives. This is a very significant burden." *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 283 (7th Cir. 2003) (internal quotations omitted); *see also Forseth v.*

*Vill. of Sussex*, 199 F.3d 363, 370–71 (7th Cir. 2000). Government action may be rational even if it is unwise, improvident, or out of harmony with a particular school of thought. *John C. & Maureen G. Osborne Revocable Family Tr. v. Town of Long Beach, Ind.*, No. 3:17-CV-227 JD, 2018 WL 1471903, at *4 (N.D. Ind. Mar. 26, 2018) (citing *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013)). Governmental action will pass the rational basis test if a sound reason may be hypothesized. *Goodpaster*, 736 F.3d at 1071 (internal quotations omitted).

A rational justification for the Defendants' actions seems apparent given the present facts. While the Plaintiff did not manifest an intent to abandon the nonconforming use status of the property, it did not follow proper procedures to maintain such use.[4] The other Sexually Oriented Business that the Plaintiff identifies to bolster its argument applied for a Certificate of Use within the twelve-month period before its nonconforming use expired. (Defs.' Br. in Supp. of Mot. for Summ. J. at 19) The Plaintiff filed for its Certificate of Use approximately three months after FWB had forfeited its nonconforming use status. The two situations are not comparable as the Plaintiff failed to follow the City's procedures, while the comparator referenced did so. *See Labella Winnetka, Inc v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (noting that to be similarly situated, a comparator must be "identical or directly comparable" to the plaintiff "in all material respects"). The Defendants have a legitimate governmental objective in requiring potential businesses to adhere to the requirements of its zoning regulations and there was a rational basis for the different treatment between the two entities.

---

[4] Indeed, there is an argument that the Plaintiff in this case is not suing the correct actor. The Plaintiff refers to the non-conforming use status of the Property as "valuable" and it is unclear whether the Plaintiff was aware that this status had been lost prior to its involvement with the Property. If the Plaintiff was not so informed, it should seek redress from FWB, not the Defendants.

Further, even if the Defendants' decisions were flawed or incorrect, it does not necessarily mean that the Plaintiff's rights were violated under the Fourteenth Amendment. *See, e.g.*, *Hartland Sportsman's Club, Inc. v. Town of Delafield*, 35 F.3d 1198, 1202 (7th Cir. 1994) (holding that the "Town's zoning action in violation of state law … does not in itself rise to the level of a violation of substantive due process."); *Coniston Corp. v. Vill. of Hoffman Estates*, 844 F.2d 461, 466 (7th Cir. 1988) ("No one thinks substantive due process should be interpreted so broadly as to protect landowners against erroneous zoning decisions."). Therefore, the Plaintiff's Fourteenth Amendment claim cannot survive summary judgment as the Defendants' allegedly flawed zoning decision does not give rise to a substantive due process claim.

### C. Overturning the Zoning Ordinance

The Plaintiff petitions the Court for judicial review of the decision of the Fort Wayne Board of Zoning Appeals, rendered on June 21, 2018. (Pl.'s Compl. ¶ 42.) The Plaintiff argues that the Board's decision was arbitrary, capricious, and violated the Plaintiff's rights pursuant to the First and Fourteenth Amendments. (*Id.*) The Defendants do not move for summary judgment pursuant to the Plaintiff's claim. (Defs.' Mot. for Partial Summ J. at 1.) Rather, the Defendants request that the state law claim be remanded to state court. (*Id.*)

The supplemental jurisdiction statute provides that the Court "may decline to exercise supplemental jurisdiction" over state-law claims if the Court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court has only supplemental jurisdiction over the Plaintiff's petition for judicial review of the zoning ordinance, which arises under state law. The Plaintiff cites *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 157 (1997), to support its contention that the Court may review the BZA's decisions. (Pl.'s Br. in Supp. of Mot. for Prelim. Inj. at 3, ECF No. 4.) This case, however, clearly states

that the Court is not obligated to extend its jurisdiction over such claims. "Of course, to say that the terms of § 1367(a) authorize the district courts to exercise supplemental jurisdiction over state law claims for on-the-record review of administrative decisions does not mean that the jurisdiction *must* be exercised in all cases. Our decisions have established that pendent jurisdiction 'is a doctrine of discretion, not of plaintiff's right.'" *Int'l Coll. of Surgeons*, 522 U.S. at 172 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

The Court will decline to exercise jurisdiction pursuant to this standard for two reasons: first, the Court should not function as a board of zoning appeal and; second, the Court has dismissed all the Plaintiff's federal law claims. The Seventh Circuit has held, repeatedly, that district courts are not to act as boards of zoning appeals.

> "Federal courts are not boards of zoning appeals. This message, oft-repeated, has not penetrated the consciousness of property owners who believe that federal judges are more hospitable to their claims than are state judges. Why they should believe this we haven't a clue; none has ever prevailed in this circuit, but state courts often afford relief on facts that do not support a federal claim. Is it that they have omitted the steps necessary to obtain review in state court and hope for the best in a second-chance forum? Well, we are not cooperating. Litigants who neglect or disdain their state remedies are out of court, period." *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 165 (7th Cir. 1994).

Finally, as the Court previously explained, the FWZO does not violate the Plaintiff's First or Fourteenth Amendment rights. The FWZO is a content-neutral regulation that survives an intermediate scrutiny analysis and the Defendants had a rational reason for their denial of the Plaintiff's Certificate of Use. This Court is not an appropriate forum to review the Plaintiff's claim. *See River Park*, 23 F.3d at 167 ("Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court."). A district court may decline to exercise jurisdiction over state law claims when the Court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "Although the decision is

18

discretionary, when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (internal quotations omitted). The Plaintiff should bring its claims in state court. Accordingly, the Court DISMISSES WITHOUT PREJUDICE the Plaintiff's request for judicial review of the Fort Wayne Board of Zoning Appeals' ruling.

### D. Motion for Preliminary Injunction

A preliminary injunction is an extraordinary remedy. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Joelner v. Vill. of Washington Park, Ill.,* 378 F.3d 613, 619 (7th Cir. 2004). Violation of the First Amendment constitutes irreparable harm and protecting the First Amendment is always in the public interest. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). "[I]n First Amendment cases, the likelihood of success on the merits will often be the determinative factor. *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (internal quotations omitted).

As described in the foregoing, the Plaintiff's First and Fourteenth Amendment claims fail to survive the Defendants' Motion for Summary Judgment. Accordingly, the Plaintiff cannot meet the requirements for a preliminary injunction as the Plaintiff would not succeed on the merits. Therefore, the Court DENIES the Plaintiff's Motion for a Preliminary Injunction.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Plaintiff's Motion for Preliminary Injunction and Evidentiary Hearing [ECF No. 3]. The Court GRANTS the Defendants' Motion for Partial Summary Judgment [ECF No. 25]. The Plaintiff's remaining claim for judicial review of the Fort Wayne Board of Zoning Appeals' decision is DISMISSED WITHOUT PREJUDICE. Finding no just reason for delay, the Court DIRECTS that the Clerk enter judgment in favor of the Defendants and against the Plaintiff on Counts I–V of the Complaint.

SO ORDERED on January 25, 2019.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT